## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JONATHAN D. CRUMLY, SR., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO: _____ |
| COBB COUNTY BOARD OF COMMISSIONERS; TIM LEE, CHAIRMAN, in his official capacity; WOODY THOMPSON, VICE-CHAIRMAN, in his official capacity; HELEN GOREHAM, COMMISSIONER, in her official capacity; BOB OTT, COMMISSIONER, in his official capacity; and JOANN BIRRELL, COMMISSIONER in her official capacity; COBB COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION; JANINE EVERLER, DIRECTOR, in her official capacity, | |
| Defendants. | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF

**COMES NOW** Jonathan D. Crumly, Sr., Plaintiff in the above-styled action

("Plaintiff"), and, for his Verified Complaint for Declaratory, Injunctive, and other

Relief, shows this Court as follows:

## **Nature of the Case**

1.

This is an action challenging the constitutionality of the current Cobb County Board of Commissioners districts ("County Commission"). This constitutional challenge is brought under 42 U.S.C. § 1983 and the Equal Protection Clause of the United States Constitution, as well as the Constitution of the State of Georgia, inasmuch as the present districts of the County Commission are so disproportionate in population that they violate the principle of "one person, one vote" and the continued use of such districts cannot be justified as furthering a compelling governmental interest. Plaintiff seeks a declaration that, because of the disproportionate sizes of the current districts, their continued use in future elections, including the election scheduled for 2012 is unconstitutional. Plaintiff also asks that the Court to implement a new redistricting plan consistent with constitutional requirements. Plaintiff also requests injunctive relief, prohibiting further Board member qualifications from being determined or elections from being conducted under the present districts.

## Statement of Jurisdiction

2.

This action arises under Article 4, § 2, the Fourteenth Amendment to the Constitution of the United States and Article I, § I, ¶ II of the Constitution of the State of Georgia.  This action is brought under 42 U.S.C. §§ 1983 and 1988.

3.

This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 2201.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  Defendants all reside and/or function as entities within the Northern District of Georgia and are subject to personal jurisdiction in this Court.

4.

Plaintiff has complied with the provisions of O.C.G.A. § 21-2-32(g) by providing a copy of this action to the Chair of the Georgia State Election Board via certified mail.

## Parties

5.

Plaintiff Jonathan D. Crumly, Sr. is a resident and elector of Cobb County, Georgia.  Jonathan D. Crumly, Sr. resides at 990 Westersham Court, Marietta, Georgia 30064 and votes in Commission District 1.  He desires and intends to

participate in the electoral and political processes of Cobb County, including the

2012 Commission elections, on the basis of representational equality with other

citizens of Cobb County and not to have his voting strength diluted or debased

through use of the existing district plan by which the five members of the County

Commission are eligible to and do run for office.  The disproportionate size of the

current districts adversely affect Jonathan D. Crumly, Sr. and deprive him of his

rights under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution.

6.

Defendant Janine Eveler is the current Department Head of the Cobb County

Board of Elections and Registration ("Elections Board").

7.

Defendant Elections Board is responsible for conducting elections in Cobb

County, Georgia.  The Elections Board has the lawful duty to:  receive notices of

candidacy and qualifying fees from candidates seeking election to the County

Commission; prepare and publish all notices and advertisements in connection

with the conduct of elections; transmit to the Secretary of State a copy of any

publication in which a call for an election is issued; prepare, equip and furnish all

polling places; count all ballots; and certify the results of all elections as prescribed by law.

8.

Defendants Eveler and Election Board are sued for the limited purpose of enjoining them from (a) accepting candidate qualifications for candidates for the Cobb County Board of Commissioners and (b) conducting elections for the Cobb County Board of Commissioners.

9.

Tim Lee, Woody Thompson, Helen Goreham, Bob Ott and JoAnn Birrell ("Commission Defendants") are the members of the Cobb County Board of Commissioners.

10.

All Defendants are sued in their official capacities.  All Defendants act in their official capacities under color of state law.  However, because the Commission districts are in violation of the equal protection clause and the one person, one vote principle set forth below, Defendants' actions with respect to the conduct of elections under the existing district lines are outside the scope of their authority in those capacities.

11.

Plaintiff brings this action as a registered voter and constituent of Georgia and Cobb County, whose vote with respect to local governmental matters is diluted by the existing, disproportionately-sized districts for electing the five members of the Cobb County Board of Commissioners in violation of 42 U.S.C. § 1983 and who, therefore, is denied equal protection as guaranteed by the Fourteenth Amendment of the United States Constitution.

**Background Facts**

12.

Cobb County is divided into four Commission districts with its Chairman elected at-large.  While the Chairman is elected at-large, each of the other four Commissioners are required to reside in specific districts.

13.

Due to material shifts in the populations within Cobb County's four Commission districts over the past decade, as evidenced by the most recent United States decennial census, the number of citizens included in each district for the Cobb County Board of Commissioners is not equal.

14.

The four County Commission districts have not been reapportioned after the 2010 census.

15.

The shifts in population following the 2010 Decennial Census required the redistricting of the County Commission districts so that each of the four Commission Districts would have population that is as nearly equal as practicable.

16.

While Defendant Commissioners can submit and in fact did submit a redistricting plan to the General Assembly, only the Georgia General Assembly can reapportion the County Commission districts during a regular or special session. Although the 2012 regular session of the General Assembly has ended, no reapportionment plan for the Cobb County Commission has been adopted and no special session for the purpose of reapportioning these districts has been called by the Governor.

17.

The County Commission districts, as presently configured, are accurately represented by Exhibit A attached hereto and incorporated herein. The districts as presently configured contain approximately the following populations:

| District | Population |
|----------|-----------|
| 001 | 196,029 |
| 002 | 162,396 |
| 003 | 155,256 |
| 004 | 174,463 |

18.

The population data for the Cobb County Districts from the 2010 Census shows a total population of 688,144 with a corresponding ideal population per District of 172,019 to avoid either diluting or increasing voting strength. The evaluation of this population data broken down by district results in the following deviations from the ideal population per district as presently configured:

| District | Population | Ideal Population | Deviation | Deviation Percentage |
|----------|-----------|------------------|-----------|----------------------|
| 001 | 196,029 | 172,019 | 24,010 | 14.0% |
| 002 | 162,396 | 172,019 | -9,623 | -5.6% |
| 003 | 155,256 | 172,019 | -16,763 | -9.7% |
| 004 | 174,463 | 172,019 | 2,444 | 1.4% |

The above statistics are based upon a data compilation from the Legislative and Congressional Reapportionment Office of the Georgia General Assembly. A summary of this data compilation is attached hereto and incorporated herein as Exhibit B.

19.

As shown by the above figures, the voting strength of voters in District 1 is severely diluted, while voters in District 3 have a disproportionately large voting strength.

20.

During the 2012 regular session of the Georgia General Assembly, several members of the Cobb delegation to the Georgia House of Representatives submitted House Bill 905 ("HB 905") in an effort to redistrict the Cobb County Commission Districts such that the malapportionment evident from the 2010 census data would be resolved.  HB 905 was developed in coordination with the Defendant Commissioners.  HB 905 passed out of the Georgia House of Representatives on February 21, 2012.  A true and correct copy of HB 905, as passed by the Georgia House of Representatives, is attached hereto and incorporated herein as Exhibit C.

21.

The County Commission districts, as configured in HB 905 (the "HB 905 Districts"), are accurately represented by Exhibit D attached hereto and incorporated herein.  The configurations of the HB 905 Districts contain approximately the following populations:

| District | Population |
|----------|-----------|
| 001 | 172,200 |
| 002 | 172,582 |
| 003 | 171,425 |
| 004 | 171,871 |

22.

The population data for the HB 905 Districts from the 2010 Census shows a total population of 688,078 with a corresponding ideal population per District of 172,019 to avoid either diluting or increasing voting strength.  The evaluation of this population data broken down by district results in the following deviations from the ideal population per district as presently configured:

| District | Population | Ideal Population | Deviation | Deviation Percentage |
|----------|-----------|------------------|-----------|----------------------|
| 001 | 172,200 | 172,019 | 181 | 0.1% |
| 002 | 172,582 | 172,019 | 563 | 0.3% |
| 003 | 171,425 | 172,019 | -594 | -0.4% |
| 004 | 171,871 | 172,019 | -148 | -0.1% |

The above statistics are based upon a data compilation from the Legislative and Congressional Reapportionment Office of the Georgia General Assembly.  A summary of this data compilation is attached hereto and incorporated herein as Exhibit E.

– 10 –

23.

In addition to the minimal population deviations, the HB 905 Districts maintain and preserve existing communities of interest within each County Commission District, provide compact districts and provide clarity to citizens as to which County Commissioner represents their surrounding community.

24.

Had the Senate passed HB 905, none of the Cobb Commission Districts would violate the constitutional rights of voters and citizens of Cobb County, none of the Cobb Commission Districts would be unconstitutionally malapportioned districts and the HB 905 Districts would not deprive voters of the benefit of the one person – one vote principle.

25.

Unfortunately for the voters and citizens of Cobb County, a member of the Cobb delegation to the Georgia Senate, State Senator Steve Thompson (District 33), opposed the HB 905 Districts.

26.

On March 29, 2012, the last legislative day of the 2012 regular session of the Georgia General Assembly, the Georgia Senate State and Local Governmental Operations Committee passed a substitute to HB 905 (the "Senate Substitute").

The Senate Substitute did not pass out of the Georgia Senate on March 29, 2012. A true and correct copy of the Senate Substitute is attached hereto and incorporated herein as Exhibit F.

27.

The County Commission districts, as configured in the Senate Substitute (the "Senate Substitute Districts"), are accurately represented by Exhibit G attached hereto and incorporated herein.  The configurations of the Senate Substitute Districts contain approximately the following populations:

| District | Population |
|----------|------------|
| 001 | 171,994 |
| 002 | 171,965 |
| 003 | 172,322 |
| 004 | 171,797 |

28.

The population data for the Senate Substitute Districts from the 2010 Census shows a total population of 688,078 with a corresponding ideal population per District of 172,019 to avoid either diluting or increasing voting strength.  The evaluation of this population data broken down by district results in the following deviations from the ideal population per district as presently configured:

| District | Population | Ideal Population | Deviation | Deviation Percentage |
|----------|------------|------------------|-----------|----------------------|
| 001 | 171,994 | 172,019 | -25 | -0.01% |
| 002 | 171,965 | 172,019 | -54 | -0.03% |
| 003 | 172,322 | 172,019 | 303 | 0.18% |
| 004 | 171,797 | 172,019 | -222 | -0.13% |

The above statistics are based upon a data compilation from the Legislative and Congressional Reapportionment Office of the Georgia General Assembly.  A summary of this data compilation is attached hereto and incorporated herein as Exhibit H.

29.

In addition to the minimal population deviations, the Senate Substitute Districts assiduously maintained and preserved existing communities of interest within each County Commission District, provides compact districts and provided clarity to citizens as to which County Commissioner represented their surrounding community.  Additionally, the Senate Substitute Districts were drawn with a focus of keeping more than 95% of the census designated areas of Mabelton together in one Commission District, consistent with sound reapportionment principals and in a good faith effort to obtain bi-partisan support for the Senate Substitute Districts.

30.

Had the House and the Senate passed the Senate Substitute, none of the
Cobb Commission Districts would violate the constitutional rights of voters and
citizens of Cobb County, none of the Cobb Commission Districts would be
unconstitutionally malapportioned districts and the Senate Substitute Districts
would not deprive voters of the benefit of the one person – one vote principle.

31.

Unfortunately for the voters and citizens of Cobb County, Senator
Thompson also opposed the Senate Substitute Districts.

32.

Senator Thompson proposed a new map of the Cobb County Commission
Districts by way of a floor substitute to HB 905 (the "Thompson Floor
Substitute").  A true and correct copy of the Thompson Floor Substitute is attached
hereto and incorporated herein as Exhibit I.

33.

The County Commission districts, as configured in the Thompson Floor
Substitute (the "Thompson Floor Substitute Districts"), are accurately represented
by Exhibit J attached hereto and incorporated herein.  The configurations of the

Thompson Floor Substitute Districts contain approximately the following

populations:

| District | Population |
|----------|-----------|
| 001 | 171,994 |
| 002 | 172,777 |
| 003 | 172,322 |
| 004 | 170,985 |

34.

The population data for the Senate Substitute Districts from the 2010 Census

shows a total population of 688,078 with a corresponding ideal population per

District of 172,019 to avoid either diluting or increasing voting strength.  The

evaluation of this population data broken down by district results in the following

deviations from the ideal population per district as presently configured:

| District | Population | Ideal Population | Deviation | Deviation Percentage |
|----------|-----------|------------------|-----------|----------------------|
| 001 | 171,994 | 172,019 | -25 | -0.01% |
| 002 | 172,777 | 172,019 | 758 | 0.44% |
| 003 | 172,322 | 172,019 | 303 | 0.18% |
| 004 | 170,985 | 172,019 | -1,034 | -0.60% |

The above statistics are based upon a data compilation from the Legislative and

Congressional Reapportionment Office of the Georgia General Assembly.  A

summary of this data compilation is attached hereto and incorporated herein as Exhibit K.

35.

The Thompson Floor Substitute was never assigned to a legislative committee and was not submitted to the legislative committee process as had been done for HB 905 and the Senate Substitute.  Nevertheless, the Georgia Senate adopted the Thompson Floor Substitute without objection, thus sending the Thompson Floor Substitute back to the Georgia House for its consideration of final passage.

36.

The Georgia House, fully expecting to see the Senate Substitute, promptly removed the Thompson Floor Substitute, adopted the Senate Substitute and returned that version back to the Senate for agreement and final passage.

37.

Upon the return of the Senate Substitute to the Senate for agreement and final passage, Senator Thompson rose to the floor of the Senate to argue against adoption of the Senate Substitute.  As a result of the impassioned pleas of Senator Thompson from the floor of the Senate, the Georgia Senate rejected these last

minute efforts of the Georgia House to obtain final passage of the Senate Substitute.

38.

The legislative history of HB 905 notes in a footnote that "3/29/2012 House agrees to Senate Substitute [Thompson Floor Substitute] as House amended [inserting Senate Substitute]; 3/29/2012 Motion to agree to the House amendment to the Senate substitute [i.e. the Senate Substitute] failed in Senate." As a direct result of Senator Thompson's advocacy, the 2012 regular session of the General Assembly ended with no reapportionment plan for the Cobb County Commission. While Senator Thompson apparently achieved his desires for HB 905, it came at the cost of the constitutional rights of the citizens and voters of Cobb County, including the Plaintiff.

39.

A cursory review of the Thompson Floor Substitute Districts reveals that they fail to incorporate sound reapportionment principles. The Thompson Floor Substitute Districts fail to maintain existing communities of interest within each County Commission District, fail to provide compact districts and fail to provide clarity to citizens as to which County Commissioner represented their surrounding community.

40.

Qualifying for elections for County Commission is scheduled to be held May 23 through 25, 2012; primary elections will be held on July 31, 2012.  Absent the relief sought herein, Defendants will accept qualifications of candidates for these positions using the current district boundaries.

41.

Unless new district boundary lines are established prior to the upcoming qualifying period and elections, candidates for Commission seats will qualify from unconstitutionally malapportioned districts.

42.

Use of the present districts with their gross imbalance in population is so irrational on its face that its natural result will be to deprive voters of the benefit of the one person – one vote principle, as the districts were created without regard to current population.

43.

Leaving the existing Commission district lines in place treats voters unequally, in contravention of the Equal Protection Clause and the one person, one vote principle.

44.

A genuine controversy exists between Plaintiff and Defendants as to the matters asserted herein.  Plaintiff has no adequate remedy at law and no other way to guarantee his rights in connection with the upcoming candidate qualifying and election of Commission members, other than through the relief sought in this lawsuit.  Plaintiff will suffer irreparable harm if candidate qualifying and the election are allowed to proceed under the current district boundary lines, and the injury will continue until the existing lines are declared to be unconstitutionally malapportioned and their use enjoined by this Court.

## COUNT ONE: VIOLATION OF EQUAL PROTECTION

45.

Plaintiff incorporates by reference the previous allegations contained in this Complaint.

46.

Article 4, § 2 of the United States Constitution provides that "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."  Pursuant to this and other provisions of the United States Constitution, the right to vote is a fundamental right guaranteed to U.S. citizens.

47.

The Fourteenth Amendment to the United States Constitution, § 1, provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

48.

Under the Fourteenth Amendment, it is unlawful for a state to create districts for public office with a gross imbalance in population.

49.

The current version of 42 U.S.C. § 1983 provides, in relevant part, as follows:

> Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

in an action at law, suit in equity, or other proper

proceeding for redress. . .

50.

Defendants are "person[s]" and Plaintiff Jonathan D. Crumly, Sr. is a

"citizen of the United States" within the scope of 42 U.S.C. § 1983.

51.

Plaintiff Jonathan D. Crumly, Sr. intends and desires to participate in the

electoral and political processes of Cobb County on the basis of equality with other

citizens of Cobb County, including the 2012 County Commission elections.

52.

Plaintiff Jonathan D. Crumly, Sr.'s constitutional right to such equality,

namely his voting strength, has been diluted and debased by Defendants, acting

under color of state law, through the use of the existing system of malapportioned

districts by which members of the County Commission are elected.

53.

The current system of malapportioned districts deprives Plaintiff Jonathan

D. Crumly, Sr. of his rights because it creates a disparity of opportunity among

constituents residing in Cobb County for purposes of voting on County

Commission matters solely on the basis of their geographical location within the

County, in violation of the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

54.

This deprivation of Plaintiff Jonathan D. Crumly, Sr.'s right is the result of the failures of (1) the Cobb County House and Senate delegations to the Georgia General Assembly to recommend passage of a revised districting plan and (2) the Georgia General Assembly to reapportion Cobb County Commission districts in accordance with the most recent United States decennial census.

55.

Plaintiff Jonathan D. Crumly, Sr., as a resident of Cobb County Commission District 1, with a population of 196,029, is denied equal protection because only one Board member may qualify from his district, while one Board member also qualifies in District 3, with a population of only 155,256.  This disparity of opportunity among constituents residing in Cobb County for purposes of voting on County Commission matters violates the one person, one vote principle of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

56.

The current configuration of the malapportioned Cobb County Commission districts violates the equal protection rights of all Cobb County voters to participate in an electoral process premised on districts equal in population.

57.

The current configuration of the malapportioned Cobb County Commission districts is not narrowly tailored to further any compelling State interests.

58.

Leaving the malapportioned Cobb County Commission district boundary lines unaltered and failing or refusing to alter them to conform to current population prior to the impending election will violate Plaintiff's constitutional right to equal protection.

59.

There is no adequate remedy at law for the irreparable harm Plaintiff will suffer through continued use of the districts currently employed by Cobb County to elect the Cobb County Commission.  Those malapportioned districts unconstitutionally abridge the voting rights of Plaintiff Jonathan D. Crumly, Sr.; therefore, their use to qualify candidates for the County Commission and/or to conduct elections of candidates for the County Commission should be enjoined.

60.

Accordingly, Plaintiff is entitled to injunctive and declaratory relief declaring the current malapportioned Cobb County Commission districts unconstitutional and enjoining the qualification of candidates for and election of members to the Cobb County Commission until those districts are reapportioned in a manner that does not violate the Fourteenth Amendment to the United States Constitution.

## COUNT TWO: VIOLATION OF STATE CONSTITUTION

61.

Plaintiff incorporates by reference the previous allegations contained in this Complaint.

62.

The County Commission district lines, as currently drawn, perpetuate significant population variances between commission districts and, in so doing, treat voters unequally, in violation of Article I, § I, ¶ II of the 1983 Constitution of the State of Georgia.

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

A)      Assume jurisdiction of this case;

B)      Enter a declaratory judgment holding that the continued use of the malapportioned districts currently employed by Cobb County to elect members of the County Commission violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, the Constitution of the State of Georgia and 42 U.S.C. § 1983;

C)      Enjoin the qualification of candidates for and election of members to the Cobb County Commission until the malapportioned Cobb County Commission districts are reapportioned in a manner that does not violate the Fourteenth Amendment to the United States Constitution or the Georgia Constitution and 42 U.S.C. § 1983;

D)      Enter an order that reapportions the malapportioned districts for the Cobb County Commission in a manner consistent with the Fourteenth Amendment to the United States Constitution and the Georgia Constitution;

E)      Award Plaintiff the costs and attorney's fees of this action pursuant to 42 U.S.C. § 1988 or as otherwise authorized by law; and

F)      Award Plaintiff all other relief which the Court deems necessary and proper.

Respectfully submitted this 16th day of April, 2012.

MANER CRUMLY CHAMBLISS LLP

/s/ Jonathan D. Crumly, Sr.

Vinings Square, Suite B-101              Jonathan D. Crumly, Sr.
2900 Paces Ferry Road                    Georgia Bar No.  199466
Atlanta, Georgia 30339
(770) 434-0310  (telephone)
(404) 549-4666  (facsimile)
jcrumly@manercc.com (email)